# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

Guy I. Greene,

               Petitioner,

v.

Keith Ellison,

               Respondent.

Case No. 23-CV-0155 (ECT/DLM)

**REPORT AND RECOMMENDATION**

---

This matter is before the Court on Petitioner Guy I. Greene's (1) Request for Expedited Writ of Habeas Corpus Pursuant to Title 28 U.S.C. § 2241 (Doc. 1 ("Petition")), (2) Application to Proceed in District Court Without Prepaying Fees or Costs (Doc. 2 ("IFP Application")), and (3) Motion for the Appointment of Counsel (Doc. 9 ("Counsel Motion")). For the following reasons, the Court recommends denying the Petition, dismissing this action, and denying the IFP Application and Counsel Motion as moot.

The Petition challenges Mr. Greene's placement in the Minnesota Sex Offender Program ("MSOP"). (*See* Pet. 1.) On April 5, 2023, Magistrate Judge John F. Docherty issued an order explaining that the Petition, which challenges Mr. Greene's "custody pursuant to the judgment of a State court," is subject to 28 U.S.C. § 2254(b)'s exhaustion requirement. (Doc. 7 at 1–3.) Magistrate Judge Docherty noted that "the Petition does not attempt to show that Mr. Greene has met the exhaustion requirement"; indeed, a statement in the Petition suggested that Mr. Greene might seek "judicial waiver of [the] exhaustion requirement." (*Id.* at 3 (quoting Pet. 3 n.1).) As a result, Magistrate Judge Docherty ordered

Mr. Greene to show cause "why the Court should not dismiss this matter without prejudice for failure to exhaust state-court remedies."[1] (*Id.* at 3–4.)

Mr. Greene submitted his response—styled as an "objection" to Magistrate Judge Docherty's order[2]—on April 20, 2023. (Doc. No. 8 ("Response").) He apparently concedes that he has not exhausted his state-court remedies; he makes no effort to suggest that he has, for example, challenged his commitment through the necessary "complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Instead, Mr. Greene points to exceptions to the exhaustion requirement— specifically, the exceptions in 28 U.S.C. § 2254(b)(1)(B)(i)–(ii) that allow a petitioner to bypass the exhaustion requirement if "there is an absence of available State corrective process" or if "circumstances exist that render such process ineffective to protect the rights of the applicant." (*See, e.g.*, Resp. 1 (citing § 2254(b)(1)(B)(ii)); *id.* at 10 (noting both exceptions).)

The Court will address the exceptions in sequence.[3] As for the first exception, the Supreme Court has stated that it applies when "there is no opportunity to obtain redress in

---

[1] This matter was transferred to this Court on April 24, 2023, after the entry of Magistrate Judge Docherty's order. (*See* Docket.)

[2] Mr. Greene incorrectly calls the order a "report and recommendation," but the Response is clearly addressing Magistrate Judge Docherty's order.

[3] As Mr. Greene notes (*see id.* at 5), it is a petitioner's burden to show that an exception to the exhaustion requirement applies. *See Carmichael v. White*, 163 F.3d 1044, 1045 (8th Cir. 1998) (citing cases); *Traylor v. Pugh*, No. 22-CV-1266 (NEB/TNL), 2022 WL 2302695, at *3 (D. Minn. June 27, 2022) (citing *Carmichael*).

state court." *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981) (citing *Wilwording v. Swenson*, 404 U.S. 249, 250 (1971)); *see also, e.g.*, *Hager v. Minnesota*, No. 22-CV-1229 (NEB/TNL), 2022 WL 18157534, at *2 (D. Minn. Aug. 11, 2022) (citing *Duckworth*), *report and recommendation adopted*, 2023 WL 136591 (D. Minn. Jan. 9, 2023). Minnesota does have an "available State corrective process" that permits individuals civilly committed to MSOP to challenge their commitments. The process is statutorily defined at Minn. Stat. § 253D.27–.28, and the Response does not challenge its existence.[4] Mr. Greene therefore cannot show that the § 2254(b)(1)(B)(i) exception applies.

This leaves § 2254(b)(1)(B)(ii). The Supreme Court has indicated that this exception applies where "the corrective process is so clearly deficient as to render futile any effort to obtain relief." *Duckworth*, 454 U.S. at 3 (citing *Wilwording*, 404 U.S. at 250); *see also, e.g.*, *Traylor v. Pugh*, No. 22-CV-1266 (NEB/TNL), 2022 WL 2302695, at *4 (D. Minn. June 27, 2022) (citing *Duckworth*). Mr. Greene has not shown the needed clear deficiency.

Mr. Greene claims that racial disparities infect the process by which state officials assess commitment challenges. (*See, e.g.*, Resp. 2–3.) Even if this is true—the Court need not, so does not, address the point—Mr. Greene does not explain why this problem cannot be addressed by challenging the assessment procedures in the Minnesota state courts. He

---

[4] Mr. Greene has, in fact, used the process "multiple times." *See Greene v. Harpstead*, No. 18-CV-0428 (DWF/DJF), 2022 WL 17363972, at *8 (D. Minn. Oct. 5, 2022) (discussing Mr. Greene's history of attempts to challenge his commitment through state procedures), *report and recommendation adopted*, 2022 WL 17363227 (D. Minn. Dec. 1, 2022).

also appears to suggest that Minnesota's civil-commitment scheme is generally unconstitutional. (*See id.* at 4.) But here again, the scheme's constitutionality is a question that can be tested in state-court proceedings, so Mr. Greene's assertions here do not meet the *Duckworth* standard. Finally, Mr. Greene suggests that using the commitment-challenge process has "hundreds of clients requesting their release," which will create an "inordinate delay" in navigating the process. (*See id.* at 10.) But even if the Court credits Mr. Greene's claims of delay—he provides no evidence here other than his own say so—the Court would still be hard-pressed to conclude that delay makes Minnesota's corrective process "so clearly deficient as to render" efforts to use it "futile."

Indeed, Mr. Greene's reliance on *McDeid v. Johnston*, 984 N.W.2d 864, 868 (Minn. 2023), undercuts his point. The *McDeid* plaintiffs were two MSOP clients whom the Minnesota Commitment Appeals Panel awarded a reduction in custody. *See id*. at 867–68. Their suit alleged that various state officials denied them due process by inappropriately delaying the clients' transfer to the less-restrictive setting. *See id.* at 868. A state district court held that the officials had indeed denied the plaintiffs their due-process rights, but determined that qualified immunity nevertheless protected the state officials "because the right to transfer . . . within a reasonable time of the . . . transfer orders was not clearly established when the . . . transfer orders were issued." *Id.* at 869. The district court thus granted the officials' motion to dismiss. *See id.* at 868. After the Minnesota Court of Appeals affirmed, the Minnesota Supreme Court reversed that qualified-immunity determination. *See id.* at 879.

Mr. Greene suggests that *McDeid* bolsters his case for bypassing exhaustion because it suggests malfeasance on the part of state officials dealing with MSOP clients. But the Court concludes that on the key question here—that is, whether Minnesota's "corrective process is so clearly deficient as to render futile any effort to obtain relief"—*McDeid* shows that the § 2254(b)(1)(B)(ii) exception does not apply. After all, *McDeid* features not just two MSOP clients awarded a reduction in custody through the standard statutory procedures, but also shows that Minnesota's courts are prepared to find in favor of MSOP clients when state officials (allegedly) undercut those procedures.

In summary, then, Mr. Greene has failed to carry his burden of showing that any exception to the § 2254 exhaustion requirement applies here. And because he essentially concedes that he has not exhausted his state-court remedies here, the Court cannot grant his application for a writ of habeas corpus. The Court therefore recommends denying the Petition and dismissing this action without prejudice for lack of jurisdiction. Given these recommendations, the Court further recommends denying the IFP Application and Counsel Motion as moot.

As a final issue, the Court considers whether to grant Mr. Greene a certificate of appealability ("COA"). A district court cannot grant a COA unless a petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing in this context, Mr. Greene must show "that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The Court concludes that it is unlikely any other court, including the U.S. Court of Appeals for the Eighth Circuit, would disagree with the

conclusions reached here. The Court therefore recommends that no COA be issued to Mr. Greene.

## RECOMMENDATION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT:**

1.  Petitioner Guy I. Greene's petition for a writ of habeas corpus (Doc. 1) be **DENIED**.

2.  Mr. Greene's Application to Proceed in District Court Without Prepaying Fees or Costs (Doc. 2) and Motion for the Appointment of Counsel (Doc. 9) be **DENIED** as moot.

3.  This action be **DISMISSED WITHOUT PREJUDICE**.

4.  No certificate of appealability be issued.

Dated: May 22, 2023                    *s/Douglas L. Micko*
                                       Douglas L. Micko
                                       United States Magistrate Judge

## NOTICE

This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under District of Minnesota Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. L.R. 72.2(b)(2). All objections and responses must comply with the word or line limits set for in L.R. 72.2(c).